UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SD, individually as parent and legal guardian of HV, a minor, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Civil No. 2:13-cv-00152-JDL |
| PORTLAND PUBLIC SCHOOLS, | )<br>) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

The plaintiff, SD, has moved pursuant to Federal Rule of Civil Procedure 54(d) and the pertinent provision of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C.A. § 1415(i)(3)(B)(i)(I) (2014), for an award of reasonable attorneys' fees and expenses which were incurred in an administrative due process hearing and in subsequent litigation in this court. The administrative hearing and the litigation concerned SD's objections to the individualized education plans ("IEPs") that the defendant, Portland Public Schools ("Portland"), developed for SD's minor son, HV, in his fifth, sixth, and seventh grade years.

In the court's September 19, 2014, Order (the "September 19 Order") (ECF No. 29), I concluded that Portland failed to provide HV with a free, appropriate public education for his sixth grade year (2011-2012) at Lincoln Middle School in Portland, Maine. Consequently, I also concluded that SD was "entitled to an award of compensatory education for the expenses she incurred in enrolling HV in the Aucocisco School during the 2012-2013 academic year, minus the amount the hearing

officer already awarded for HV's attendance at Aucocisco's six-week summer program and for the two-week literacy tutoring and transportation costs." ECF No. 29 at 23.

Plaintiff's counsel seeks an award of $72,307.80, representing (i) so-called "lodestar" fees of $69,246.00 through the filing of the attorneys' fee motion, (ii) $1,861.80 for compensable, out-of-pocket expenses, and (iii) additional lodestar fees of $1,200.00 incurred in preparing SD's reply memorandum in support of the attorneys' fees motion.

Portland objects that the lodestar figure of $69,246 is too high, and that it should be adjusted downward for two reasons. First, Portland argues certain work performed by plaintiff's counsel before and during the administrative hearing, and prior to the lawsuit in this court, totaling $3,650, is not compensable and should be deducted from the lodestar figure, bringing the new total to $65,596. Second, Portland argues that the new, lower lodestar figure should be reduced by 66%, "to reflect the fact that [SD] won on only one year out of the three school years that were in dispute." ECF No. 38.

## I. LEGAL STANDARDS

The IDEA permits the award of reasonable attorneys' fees to a prevailing party who is the parent of a child with a disability. 20 U.S.C.A. § 1415(i)(3)(B)(i)(I) (2014). "In IDEA attorney fee disputes, the courts generally have applied prevailing party principles from § 1988 cases." *Mr. & Mrs. C. v. Maine Sch. Admin. Dist. No. 6*, 582 F.Supp.2d 65, 67 (D. Me. 2008).

Thus, to qualify as a "prevailing party," an IDEA litigant must demonstrate that (1) she obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in the parties' legal relationship; and (3) the alteration is not merely technical or *de minimis* in nature. *Kathleen H. v. Massachusetts Dept. of Educ.*, 154 F.3d 8, 14 (1st Cir. 1998); *Regional Sch. Dist. Unit No. 51 v. Doe*, 2013 WL 3781491, *2 (D. Me. July 18, 2013). Here, there is no dispute that SD is a prevailing party. Instead, the parties dispute the degree of success she obtained. ECF No. 38 at 4.

The starting point in setting an attorneys' fee award is determining the lodestar figure—that is, the product of the number of hours reasonably expended to prosecute the lawsuit multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). The fee applicant bears the burden of producing materials that support the request, which should include "counsel's contemporaneous time and billing records, suitably detailed, and information [about] the law firm's standard billing rates." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (citation omitted). The party opposing the fee award may submit countervailing evidence. *Id.* (citing *Foley v. City of Lowell*, 948 F.2d 10, 20-21 (1st Cir. 1991)). The court, "usually after hearing arguments, will then calculate the time counsel spent on the case, subtract duplicative, unproductive, or excessive hours, and apply prevailing rates in the community (taking into account the qualifications, experience,

and specialized competence of the attorneys involved.)" *Id.* (citing *Gay Officers Action League*, 247 F.3d at 295) (quotations and internal punctuation omitted).

After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upwards or downwards, based upon "the degree of success obtained." *See Hensley,* 461 U.S. at 435-36. *See also Burke v. McDonald*, 572 F.3d 51, 65 n.11 (1st Cir. 2009). If the prevailing party achieves only partial or limited success, then the attorneys' fee award may be adjusted downward. *Id.*

## II. LODESTAR CALCULATION

A.  **Hourly Rate**

Plaintiff's counsel is Richard L. O'Meara, a partner in the Portland, Maine, law firm of Murray, Plumb & Murray, who has lengthy experience representing parties in IDEA cases. Attorney O'Meara began representing SD in August 2012, at which point he had practiced law for 25 years. Throughout the case, Attorney O'Meara's hourly rate was $300 per hour. Joining Attorney O'Meara was Nicole Bradick, Esq., a former associate at Murray, Plumb & Murray who had five years of experience at the beginning of the case; and Sara Hellstedt, Esq., an associate at Murray, Plumb & Murray who also had five years of experience at the beginning of the case. Attorney Bradick's and Attorney Hellstedt's hourly rates were $200 per hour.

Portland does not dispute the reasonableness of these hourly rates. This court has concluded in the recent past that a $300 hourly rate for experienced, Maine-based counsel such as Attorney O'Meara is reasonable, and I conclude that $300 per hour

4

is reasonable and appropriate in this case. *IMS Health Corp. v. Schneider*, 901 F.Supp.2d 172, 195 (D. Me. 2012); *see also Sabina, et. al. v. JP Morgan Chase Bank NA, et. al.*, 2014 WL 5489447, *3 (D. Me. Oct. 29, 2014). With regard to the $200 hourly rate for Attorney Bradick and Attorney Hellstedt, this court has previously found similar rates to be reasonable with regard to associate attorneys who had slightly more experience. *Spooner v. EEN, Inc.*, 829 F.Supp.2d 3, 5-8 (D. Me. 2010) (finding that an hourly rate of $210 for an associate with 9 years' experience was reasonable). I also find that the $200 hourly rate for Attorneys Bradick and Hellstedt is reasonable, as is the billing rate of $90 per hour for paralegal work. *See IMS Health Corp.*, 901 F.Supp.2d at 197.

**B.     Hours Reasonably Expended**

**(1) Pre-Suit Work**

**(a) Work Allegedly Not Related to the Administrative Hearing**

Portland objects to certain hours recorded in plaintiff's counsel's contemporaneous billing records ("billing entries"), arguing that the work did not involve prosecution of the administrative hearing but instead represented legal advice on other issues related to HV's educational program. ECF No. 38 at 4-5 (objecting to billing entries from August 20, 2012, to September 6, 2012; November 6, 2012; February 8, 2013; and April 23 and 25, 2013). Portland also claims that SD was required but neglected to segregate fees for work related to the hearing from fees for non-hearing-related work, citing *Regional Sch. Dist. Unit No. 51*, 2013 WL 3781491 at *4 and *Mr. & Mrs. C. v. MSAD 6*, 2008 WL 2609362 at *2. This objection is far too broad. The cases which Portland cites discuss the fact that the IDEA

5

prohibits the award of attorneys' fees for attendance at IEP Team meetings. This is a different question from whether the work reflected in a billing entry was directly related to prosecution of the hearing request. *See Regional Sch. Dist. Unit No. 51* at *4; *Mr. & Mrs. C.* at *2. Likewise, Portland's argument about segregation of fees is also overbroad. A fee applicant is only required to segregate fees related to IEP Team meetings. *Id*. Neither case cited by Portland requires a plaintiff seeking a fee award to segregate hearing-related fees from everything else, as Portland claims. *See id.*

Only one of the entries disputed by Portland, above, contains a reference to something that could reasonably be described as an IEP Team meeting: the September 6, 2012, entry reflecting an email sent by Attorney O'Meara to SD regarding "advice concerning her participation in meeting to which she was invited by S. Pray, Portland's new special education director." ECF No. 32-3 at 1. Because it is the plaintiff's burden to demonstrate that the contested sum is reasonably related to this litigation and not to an IEP Team meeting, I conclude that the billing entry for September 6, 2012 is not compensable, and the $60.00 charge should be deducted from the lodestar amount.

**(b) Attendance at IEP Meetings**

Portland also objects to seven billing entries totaling $390 (May 1, 15, 21, 29, and 30, and June 7 and 14, 2013) which reflect plaintiff's counsel's attendance at IEP meetings, reimbursement for which, as discussed above, is prohibited under the IDEA. ECF No. 38 at 5 (citing 20 U.S.C. § 1415(i)(3)(D)(ii); *Regional Sch. Dist. Unit No. 51*, 2013 WL 3781491 at *4; *Mr. & Mrs. C.*, 2008 WL 2609362 at *2).

I agree that the May 2013 billing entries reflect time spent by plaintiff's counsel on matters related to an IEP Team meeting, and are, therefore, not compensable. However, SD argues that two June billing entries—dated June 7 and 14, 2013—are related to "planning for the compensatory summer services the hearing officer had ordered Defendant to fund for HV," and therefore are compensable. ECF No. 39 at 3. I agree that these two items are compensable because they relate directly to the implementation of the hearing officer's order.[1]

Thus, the billing entries covering May 1, 15, 21, 29, and 30, 2013, and the first billing entry for June 7, 2013, are not allowed because they relate to SD's participation in an IEP Team meeting. The billing entries for June 7 (the second entry reflecting 0.1 hours) and June 14, 2013, are allowed. Accordingly, $330 will be deducted from the lodestar amount.

**(c) Attendance at Mediation Sessions**

Portland seeks to strike entries for October 16 and 29, 2012, and November 2, 5, 7, and 9, 2012, which reflect "time spent planning for and attending a mediation session that was a part of the administrative hearing," and which total $1,160. ECF No. 38 at 5-7. Portland argues that, because the IDEA specifically disallows attorneys' fees for participation in the mandatory "Resolution Session" process, the

---

[1] There are two billing entries dated June 7, 2013. ECF No. 32-3 at 9. The first entry reflects 0.3 hours that plaintiff's counsel spent reviewing an email message from SD regarding an IEP Team meeting that took place on May 28, 2013, and reviewing additional email messages regarding an invoice from the Aucocisco School. *Id.* Because this first June 7 billing entry does not clearly segregate the fees related to the IEP Team meeting and the fees related to the discussion of the Aucocisco School invoice, the entry is not compensable. *See Regional School Dist. Unit No. 51*, 2013 WL 3781491 at *4. The second June 7 billing entry reflects 0.1 hours spent by plaintiff's counsel exchanging email messages with SD regarding Portland's payment of the Aucocisco School's summer invoice. ECF No. 32-3 at 9. This second June 7 billing entry is the one which I find to be compensable.

7

same should be true for voluntary mediation sessions. *Id.* (citing § 1415(i)(3)(D)(iii)). This argument is noteworthy for its lack of supporting authority, and I decline Portland's invitation to expand the IDEA's narrowly-focused ban on attorneys' fee awards for work related to the mandatory Resolution Session, *see* § 1415(f)(1)(B)(i), to all IDEA-related mediation. Portland's citation to the Maine Unified Special Education Regulation ("MUSER"), § XVI.3(A)(8), is also unhelpful because that provision does not bar attorneys' fee awards for mediation-related work.

**(d) Non-Attorney Work**

Portland also objects to two billing entries for work performed by Joan Kelly, a "paraprofessional and educational advocate" employed by plaintiff's counsel, on October 29 and November 9, 2012 ($100 and $250, respectively). *Id.* at 7. It argues that "the time entries make clear that [Kelly was] . . . not performing paralegal work, but instead [was] preparing for and participating in a mediation as a non-attorney," and therefore her time should not be compensable. ECF No. 38 at 7 (citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) (the IDEA does not permit recovery of fees for non-attorney experts)).

SD, on the other hand, cites *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989), in which the Supreme Court held that the attorneys' fee "must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client," and analogizes this holding to Kelly's work, arguing that it

8

"contributes to the work product of the law firm for the benefit of its clients and . . . should not be excluded from the lodestar." ECF No. 39 at 4-5.

Although SD describes Ms. Kelly as a "paraprofessional" and an "educational advocate," rather than an expert, ECF No. 32-2 at 5-6, the Supreme Court's opinion in *Murphy* makes clear that the costs related to her services are not authorized under the IDEA. *See Murphy*, 548 U.S. at 300 ("the terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants."); *accord McAllister v. District of Columbia*, 2014 WL 901512, *5, --- F.Supp.2d --- (D.D.C. Mar. 6, 2014) (educational advocate found to be a non-attorney expert whose work was not compensable as paralegal work.).

**(2) Motion to Permit Presentation of Additional Evidence**

As previously noted above, it is my obligation to subtract "unproductive, excessive or otherwise unnecessary time" from the lodestar amount. *Nkihtaqmikon v. Bureau of Indian Affairs*, 723 F.Supp.2d 272, 287 (D. Me. 2010) (citing *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992)).

On August 5, 2013, SD filed a seven-page Motion to Permit Presentation of Additional Evidence (ECF No. 11), which was accompanied by a two-page Declaration of Christopher Kaufman, Ph.D., (ECF No. 11-1) and a three-page declaration of Karen Neidlinger (ECF No. 11-3). According to plaintiff's counsel's billing entries, Attorney Hellstedt spent 14.5 hours drafting and revising the motion and accompanying declarations. Portland filed a response in opposition to SD's motion on August 26 (ECF No. 14), and SD filed a reply brief on September 9 (ECF No. 15). Attorney

Hellstedt spent 5.4 hours drafting and revising the reply. The total amount billed for Attorney Hellstedt's time on this motion was $3,980. When combined with Attorney O'Meara's time, the total amount billed for this motion and the related four-page reply brief was $5,060. I find this to be an excessive amount, and therefore reduce Attorney Hellstedt's hours from 19.9 to 12.5, which reduces the amount billed for her time to $2,500, a reduction of $1,480.

### (3) New Lodestar Amount

SD's proposed lodestar calculation is $69,246, of which I determine that $740 is not compensable and another $1,480 is excessive. Accordingly, the new lodestar amount is $67,026.

## III. ADJUSTMENT FOR DEGREE OF SUCCESS

Portland asks that I award SD only 33% of the lodestar amount "to reflect the fact that they won on only one year out of the three school years that were in dispute." ECF No. 38 at 8. As evidence that SD placed the fifth, sixth, and seventh grade years in dispute, Portland cites SD's hearing request, in which she stated that she sought not only "reimbursement of all costs associated with [HV's] unilateral placement at the Aucocisco School" but also that she sought "to have Portland continue to fund his appropriate placement at Aucocisco going forward . . . ." R. 0004. Portland also cites SD's prehearing conference memorandum, in which she stated that all three years were disputed and that she should "receive reimbursement for the costs incurred with respect to [HV's] unilateral placement at the Aucocisco School for 2012-2013 and beyond, other compensatory relief, and/or any other remedy . . . ." R. 0033. Additionally, Portland cites the hearing officer's statement of issues, which lists all

three years as being in dispute and cites SD's post hearing argument, in which SD argues that she is entitled to reimbursement for Aucocisco-related expenses for the 2012-2013 school year and requests "such further compensatory relief for [HV] as [the hearing officer] may deem necessary to remedy the District's past violations of the IDEA." R. 2492.

I agree that the portions of the administrative record cited by Portland, as well as SD's filings in the litigation in this court, make clear that she placed all three years—HV's fifth, sixth, and seventh grade years—into dispute. Nevertheless, the fact that SD only prevailed on the issue of HV's sixth grade year rather than all three years is not, considered in isolation, a sufficient reason for reducing the lodestar amount. "[T]he court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Accordingly, "it is helpful to identify the relief sought by the plaintiff and compare it with the relief obtained as a result of the suit." *Maine Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9, 15 (1st Cir. 2003) (quotation omitted).

The relief sought by SD was reimbursement of the tuition which she paid for the two years that HV attended the Aucocisco School. This is stated clearly in SD's April 2014 memorandum of law and her June 2014 reply brief.[2] ECF No. 22 at 34 (requesting "reimbursement of the costs . . . incurred for HV to be educated [at the

---

[2] SD's reliance on *Hensley*, 461 U.S. at 435, to support her argument that she should receive a full fee award even though she did not prevail on every contention raised in the lawsuit is inapposite to the crux of what must be decided here. As explained in *Hensley*, the fee award to which SD is entitled ultimately turns on the relief she obtained. *Id.* at 435 ("the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."). This is not a case in which the plaintiff achieved the overall relief she sought despite prevailing on fewer than all of the contentions she raised.

11

Aucocisco School] since 2012."); ECF No. 26 at 10 (requesting "reimbursement of the expenses associated with his Aucocisco placement from September 2012 forward.").

As for the relief obtained, the September 19 Order awarded a remedy that fell somewhat short of what was requested because it awarded reimbursement of expenses for the 2012-2013 academic year, but not beyond. The order also deducted the amount previously awarded by the hearing officer: the cost of the six-week summer program at the Aucocisco School, the two-week literacy tutoring program, and transportation costs. Therefore, a downward reduction in the lodestar amount is appropriate.

However, a pro rata, 50% reduction in legal fees would be unjust because SD's proof in this case involved psychological testing and events in school that largely occurred in preceding academic years. In other words, SD had to present to a great extent the same body of evidence to show that she was entitled to any reimbursement—either for one year of tuition at Aucocisco, or for both years. Accordingly, in light of the partially successful result obtained by SD and the efforts and proof required to achieve that result, I conclude that a reduction in the lodestar amount is appropriate, but that the 66% reduction in the lodestar amount suggested by Portland is excessive. Instead, a more modest 30% reduction corresponds to the efforts SD undertook to achieve the result she obtained.

## IV. REPLY MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES AND COSTS

Plaintiff's counsel requests $1,200 for four hours he spent reviewing and replying to Portland's Opposition to SD's Motion for Attorneys' Fees and Costs. One

thousand two hundred dollars for four hours' work means that plaintiff's counsel has applied his normal $300 hourly rate. However, in his declaration which accompanied the original attorneys' fee motion, Attorney O'Meara indicated that he applied a $200 hourly rate to his work on the motion. Therefore, the appropriate reimbursement for Attorney O'Meara's time spent working on the reply memorandum is $800 ($200 per hour times four hours).

## V. CONCLUSION

For the reasons discussed above, SD's Motion for Attorneys' Fees and Costs (ECF No. 32) is **GRANTED IN PART**. The total award of fees and costs is $49,574.50, reflecting an adjusted lodestar figure of $46,918.20, plus costs of $1,856.30 (the original requested amount minus $5.50 in travel expenses for Ms. Kelly), plus $800 for work on SD's reply in support of attorneys' fees (ECF No. 39).

**SO ORDERED.**

Dated: December 11, 2014 /s/ Jon D. Levy
U.S. DISTRICT JUDGE